## Wagner et al. *versus* Elliott.

1. The principle which governs in all cases of substitution is one of equity merely, and is to be carried out in the exercise of a proper equitable discretion, with a due regard to the legal and equitable rights of others.

2. A. having a judgment against B., which was a lien on his land, issued an execution and levied on personal property which was claimed by others, who gave bond, and an issue being framed under the Sheriff's Interpleader Act, the verdict was for claimants, which verdict was subsequently set aside. Afterwards another judgment-creditor of B. issued execution against his real estate, and the same having been sold, A.'s judgment was paid in full from the proceeds. They however proved insufficient to pay the judgment of G., another judgment-creditor of B. whose judgment was postponed to that of A. H., the surety of B., in the obligation on which the judgment of G. was obtained, paid to G. the balance of his judgment and then asked the court to subrogate him to the rights of A., as defendant in the above feigned issue : *Held*, that he was not entitled to subrogation.

October 19th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Erie county :* Of October and November Term 1880, No. 97.

Feigned issue wherein H. G. Wagner, T. S. Wagner and J. H. Wagner were plaintiffs and G. T. Elliott subrogated as defendant, in place of H. J. Lowry and Frank Gunnison, committee of M. B. Lowry, a lunatic.

The material facts will be found in the opinions of this court and the court below.

The court, Galbraith, P. J., filed the following opinion :

[Wagner *v.* Elliott.]

" G. T. Elliott, being the co-defendant and surety of G. H. Wagner in a judgment in favor of the Marine National Bank of Erie, and having paid the debt, now asks to be subrogated to the rights of the plaintiffs in a certain judgment in which H. J. Lowry et al., committee of M. B. Lowry, are plaintiffs, against said G. H. Wagner, to enable him to collect the amount of the first-named judgment so paid by him.

" The record shows that the Lowry judgment was senior to the bank judgment, and that it has been fully paid from the money made from the sale of Wagner's real estate, which, however, did not reach the bank judgment. Before the sale of the land an execution was issued on the Lowry judgment and a levy made on personal property alleged to belong to the defendants, but which was claimed by H. J. Wagner and brothers, his sons, and by J. B. Wagner, a brother, and issues were framed under the Sheriff's Interpleader Act to try the question of ownership.

" Pending the trial of those issues the Lowry judgment was paid out of the distribution of the money made from the land as before mentioned.

" There can be no question that the surety, having paid the bank judgment, is entitled to be subrogated to the rights of the plaintiffs in that case. It is equally clear that, as between the bank and the committee of Lowry, the former would be entitled to subrogation to their rights as against the defendant, for the reason that the plaintiffs in the Lowry judgment had two funds to which they could look for payment after their levy upon the personal property, while the bank had only the one fund to look to, namely, that arising from the sale of the land. The payment of the Lowry judgment might have been deferred until the result of the contest over the personal property was had, but as it was not, and the Lowry judgment was paid, the junior judgment has an equitable claim for subrogation to the rights of the older judgment, and to whose rights Elliott succeeds, as standing in place of the plaintiffs in the bank judgment. The process issued for the collection of the Lowry judgment and the rights acquired under that execution are of course a part of the judgment and go with it as included therein, and it follows, therefore, that the holder of the bank judgment ought to have the right to prosecute the remedies commenced by the holders of the senior judgment, and to look to the personal property taken in execution therein.

" It was not required to pay the Lowry judgment, because it was paid out of the land. Why should it not now avail the meritorious surety, who will otherwise suffer loss while the defendants, whose debt he has been compelled to pay, escapes ? The issues are still pending, and the property in question is still in *gremio legis*, or ought to be, for if the sheriff has not the property, he has bonds for its production. We can see no good reason against this

[Wagner v. Elliott.]

appeal to the equity powers of the court on the facts shown, but, on the contrary, the strongest reason in common honesty for its exercise."

The court then made the decree which will be found below.

The plaintiffs in the feigned issue took this appeal, alleging that the court erred in the following order of subrogation made April 28th 1879 :

"It is therefore ordered that G.. T. Elliott be subrogated to the rights of the Marine National Bank of Erie v. G. H. Wagner and G. T. Elliott, and also to the rights of the plaintiffs, H. J. Lowry et al., committee, v. G. H. Wagner, No. 191, September Term, 1874, including the rights of said plaintiffs in the feigned issues arising under said judgment and the executions issued thereon, and being the cases of H. G. Wagner et al. v. H. J. Lowry et al., and that G. T. Elliott is subrogated in place of said H. J. Lowry et al., as defendant in said case."

*Benson & Brainerd*, for appellants.—Courts will not subrogate when it is unjust to other parties or produces injustice in any respect whatever: Erbs's Appeal, 2 P. & W. 296; Kyner v. Kyner, 6 Watts 221; Coats's Appeal, 7 W. & S. 99; McGinnis's Appeal, 4 Harris 444; Lloyd v. Galbraith, 8 Casey 103. The law of subrogation is equitable, and will not be enforced against legal rights : Fink v. Mehaffey, 8 Watts 384 ; Wallace's Estate, Russell's Appeal, 9 P. F. Smith 401; Grings's Appeal, 8 Norris 436. Here injustice was done both to the plaintiffs in the feigned issue and the surety on their bond by the order of subrogation.

*Davenport & Griffith* and *Frank Gunnison*, for appellee.—Appellee having, as security, paid the bank judgment is entitled to be subrogated to all its rights : Kyner v. Kyner, *supra ;* McCormack's Adm'r v. Irwin, 11 Casey 111; Mosier's Appeal, 6 P. F. Smith 76; Fleming v. Beaver, 2 Rawle 128; Cottrell's Appeal, 11 Harris 294 ; 1 Story's Eq. Jur., sect. 653 : Brightly's Eq. Jur., sect. 183.

Mr. Justice GREEN delivered the opinion of the Court, November 8th 1880.

In Fink v. Mehaffy, 8 Watts 384, it was held that, the doctrine of substitution being one of mere equity and benevolence, will not be enforced at the expense of a legal right. In McGinnis's Appeal, 4 Harris, on p. 448, we said : "The principle which governs in all cases of substitution is one of equity merely, and is to be carried out in the exercise of a proper equitable discretion with a due regard to the legal and equitable rights of others." In Erb's Appeal, 2 P. & W., on p. 298, ROGERS, J., in delivering the opinion of the court, said : "Where, therefore, an application is made for substi-

tution, the court will take care that the subrogation of the surety shall work no injustice to the rights of others." In Ziegler *v.* Long, 2 Watts 206, SERGEANT, J., said : " But this principle must be employed, like all other rules of equity, to the attainment of justice ; it is not to be used to overthrow the equity of another person, and thus work injustice." In Lloyd *v.* Galbraith, 8 Casey, on p. 110, we said, STRONG, J. : " Subrogation is not to be allowed except in a clear case, and where it works no injustice to the rights of others." The same doctrine was repeated in Russell's Appeal, Wallace's Estate, 9 P. F. Smith 401, and Gring's Appeal, 8 Norris 339.

Tested by these principles let us consider the relative positions and rights of the parties affected by the order for subrogation in the present case.

M. B. Lowry held a judgment in the Court of Common Pleas of Erie county against Gideon H. Wagner, No. 191, September Term 1874. This judgment was a lien upon G. H. Wagner's real estate, and M. B. Lowry having become a lunatic, his committee, H. J. Lowry and Frank Gunnison, caused a fi. fa. to be issued on the judgment to No. 178, May Term 1878. Upon this writ a levy was made on certain barley, clover-seed and rails as the property of G. H. Wagner. This property was claimed by the appellants, H. G. Wagner, T. S. Wagner and J. H. Wagner, as belonging to them. They gave a bond to the sheriff dated March 28th 1877, and took the property. A feigned issue under the Sheriff's Interpleader Act was awarded to determine the title to this personal property, No. 202, May Term 1877, in which the appellants were plaintiffs, and the committee of M. B. Lowry were defendants. The issue was tried before a jury, and resulted in a verdict for the appellants on October 25th 1877, thus determining that the title was in the appellants and not in G. H. Wagner, the defendant in the judgment. A rule for a new trial having been granted on October 27th 1877, was made absolute on January 7th 1878. The new trial has not yet taken place. On the 25th of June 1878, one G. T. Elliott presented a petition praying to be subrogated in the case to the rights of H. J. Lowry, and Frank Gunnison, committee of M. B. Lowry. An answer to this petition was filed by the appellants on November 11th 1878, and on April 28th 1879, the court made an order of subrogation, and from that order the present appeal to this court is taken. The facts urged in support of Elliott's claim to subrogation were as follows :

The Marine National Bank recovered a judgment No. 492, September Term 1875, against Gideon H. Wagner and George T. Elliott for $1500, in which Wagner was the principal debtor and Elliott was surety. As such surety Elliott paid the judgment of The Marine National Bank on June 25th 1878, and was subrogated to the rights of the bank in the final order of subrogation on

April 28th 1879. To this order no objection is made. In the petition for subrogation, it was set forth that the judgment of The Marine Bank was a lien on G. H. Wagner's land in Erie county, and that this land was sold by the sheriff under a judgment obtained by the Erie Dime Savings and Loan Company, at February Term 1878; that by this sale the liens of all the judgments against G. H. Wagner were divested and the judgment of M. B. Lowry v. G. H. Wagner was paid in full. It further appeared that the proceeds of the sale of G. H. Wagner's real estate having been paid into court, an auditor's report distributing the money was confirmed nisi on May 15th 1878, and that on May 29th 1878, the whole amount, $1427, due on the Lowry judgment was paid to the committee, thus paying off and satisfying the judgment in full. This payment being accomplished on May 29th 1878, occurred within four days of one month before Elliott paid off the judgment of The Marine National Bank, and presented his petition for subrogation, both of which facts transpired on June 25th 1878. Now, it is claimed by the appellants that the effect of this payment of the Lowry judgment was to terminate the proceedings under the feigned issue, and, therefore, they were no longer bound to respond in that case. This position is undoubtedly true as between them and the committee of M. B. Lowry. The question that now arises is, are the appellants bound to submit to have those proceedings reopened to have another trial as to the ownership of the personal property involved in that issue, incur the expense of such a trial and the risk of an adverse verdict, in order that Elliott may get his money out of this personal property as the subrogated representative of M. B. Lowry? We think not. The bond given by the appellants to the sheriff was conditioned for the delivery of the goods at the termination of the issue pending between them and the committee of M. B. Lowry, a surety, S. B. Wagner, joined them in the execution of the bond and was responsible for the performance of its condition. When the Lowry judgment was paid by the proceeds of G. H. Wagner's land, the proceedings under the feigned issue had reached their termination as to the original parties to the issue and to the bond. We see no reason why the surety could not then insist that he should be subject to no further responsibility on his obligation. Certainly the committee of M. B. Lowry could have no further resort to him. If, now, the subrogation is permitted to take place and another trial to be had, the surety is subjected to still further liability to other persons than those named in the bond or in the proceedings at the time the issue was framed and the bond given. But he never contracted for such additional liability, and he at least is one person whose positive and plain legal rights will be changed in a most material respect if the subrogation is affirmed. Indeed, the very object of the subrogation is to produce such a change; to make him liable to pay the debt to persons entirely

[Wagner *v.* Elliott.]

different from those with whom he contracted when he signed the bond. The same considerations apply to the appellants, the other parties to the bond. They must become subject to fresh expense and hazard, and to new and additional liabilities to those which held them under the bond and under the pleadings. From and after the 29th of May 1878, they were entirely discharged from all liability. Now, it is sought to reimpose the full measure of their liability from the 25th day of June 1878. This, too, in a matter of purely equitable cognisance and upon equitable principles solely and in favor of persons to whom they never owed any duty whatever. We consider that this would be doing injustice to the appellants and their surety, and, therefore, it is not a proper case for enforcing subrogation.

The order of the court below subrogating G. T. Elliott to the rights of H. J. Lowry and Frank Gunnison in the judgment No. 191, September Term 1874, and in the feigned issues arising under the said judgment and the executions issued thereon, being the cases No. 202, May Term 1877, and No. 206, May Term 1877, is reversed at the cost of the appellees.