CITY OF PITTSBURG v. MURPHY et al.

(Circuit Court of Appeals, Third Circuit. June 28, 1899.)

(No. 21, March Term.)

MUNICIPAL CORPORATIONS — ASSESSMENTS FOR IMPROVEMENTS — VALIDITY OF LIEN.

Act Pa. Feb. 24, 1871 (P. L. 126), provides for the making and keeping in the office of the engineer of the city of Pittsburg of books of plans showing the situation and dimensions of property in the city, and also containing the names of the owners, and a record of transfers. It makes it the duty of owners to have their property registered in such books, requires grantees to have their conveyances entered thereon before they shall be eligible to record, and prothonotaries and clerks of courts in which proceedings for partition shall be had to make reports thereof to the engineer showing the divisions and transfers of property therein made, and provides that property shall not be subject to sale for taxes or other municipal claims except in the name of the registered owner. The purpose of the act, as declared by the supreme court of the state, is to facilitate the assessment and collection of taxes and municipal claims on real estate, and to protect the registered owners against the sale of their property for taxes or assessments without notice to them. A conveyance made in 1837 of what was then a rural tract of land, but later became a part of the city, was entered on the books of the engineer. In 1871, after the death of the grantee, the land was partitioned among her heirs, but the proceedings were not reported to the engineer by the clerk as required by law. Subsequently one of the heirs to whom a portion had been allotted subdivided the same, the plan thereof being approved by the engineer, and entered on his books in the name of the heir. *Held* that, as to the lots shown by such subdivision, the heir, and not her ancestor, was

the registered owner for the purposes of municipal assessment, and that liens for such assessments filed thereon in her name when she was in fact the owner, and which were otherwise regular, were valid as against a subsequent incumbrancer claiming through her.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

J. C. Gray, for appellant.
J. S. Ferguson, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

ACHESON, Circuit Judge. : Isabel C. Sargent, widow of S. J. Sargent, executed to the Mutual Life Insurance Company of New York a mortgage dated June 2, and recorded June 4, 1894, of certain parcels of land situate in the Nineteenth ward of the city of Pittsburg, described as numbered lots in a plan of lots laid out by said Isabel C. Sargent, and recorded in Allegheny county in Plan Book, vol. 7, p. 153. This mortgage also recited as the source of the mortgagor's title proceedings in partition in the orphans' court of Allegheny county at No. 6, June term, 1871. Judgment having been entered in the court below against the defendant in a scire facias upon the mortgage by virtue of a writ of levari facias thereon, the marshal sold the mortgaged premises, and returned a schedule of distribution of the proceeds of sale. After appropriating a sum sufficient to satisfy the mortgage to the insurance company, the marshal applied the residue of the fund, so far as was necessary, to the discharge of municipal claims of the city of Pittsburg for the grading, paving, and curbing of Beatty street and Supreme alley, the lots so sold abutting thereon. The municipal claims so allowed were as follows: On August 14, 1894, the city of Pittsburg filed at Nos. 3 and 4, November term, 1894, of the court of common pleas No. 3 of Allegheny county, municipal liens for the grading, paving, and curbing of Beatty street, and on March 11, 1896 the city filed at No. 50, March term, 1896, of the same court, a municipal lien for the grading, paving, and curbing of Supreme alley. These liens were filed against the same lots of ground described in and covered by the above-recited mortgage. Mrs. S. Sargent was named as owner at Nos. 3 and 4, November term, 1894, and Mrs. S. J. Sargent was named as owner at No. 50, March term, 1896. Murphy & Hamilton excepted to the marshal's allowance of these municipal liens. The rights of the exceptants arose thus: Mrs. Sargent was married to Edwin Powell in September or October, 1894. Afterwards Edwin Powell, and Isabel C. Powell (formerly Isabel C. Sargent), his wife, executed to Murphy & Hamilton a mortgage dated May 24 and recorded May 25, 1895, embracing, inter alia, the same lots of ground which had been mortgaged to the Mutual Life Insurance Company of New York as above mentioned. The circuit court sustained the exceptions of Murphy & Hamilton to the marshal's return only because the municipal liens were not filed in the name of Isabella M. Negley, a former owner of the land, who was assumed to be the only properly registered owner. In its opinion the court said: "As to this land,

therefore, the liens, not being filed in the name of the registered owner as returned, viz. Isabella M. Negley, cannot be sustained."

The evidence shows, and, as we understand the case, it is conceded, that the city of Pittsburg lawfully graded, paved, and curbed Beatty street and Supreme alley, highways upon which the lots of ground sold by the marshal abut; that by statute these lots were subject to assessment and lien for a proportionate part of the cost of the work; that the work was done before Murphy & Hamilton took their mortgage; that the assessments against these lots as made were correct in amounts; and that the liens therefor were filed in the office of the prothonotary of the court of common pleas No. 3 of Allegheny county against the lots within the time required by law. The supposed infirmity in these municipal claims, then, consists in the alleged failure of the city officials (in the single particular above mentioned) to comply with the requirements of the act of assembly of February 24, 1871 (P. L. 126), entitled "An act for the registry of lots in the city of Pittsburgh." This registry act provides for the making and keeping in the office of the city engineer of books of plans of the city showing "the situation and dimensions of each property therein," and who is the owner thereof, with such succession of blank columns as will permit the names of future owners to be entered therein, with the dates of transfers, and with index for recording such names alphabetically. The third section enacts that, to enable the city engineer to keep such book of plans, "it shall be the duty of all parties acquiring real estate by purchase, will, descent, partition or otherwise to make report to him of such conveyance or transfer, with the precise dimensions and locality of the premises, and so doing the same shall be received without charge and noted on the deed or title paper by the city engineer or his assistant"; and the recorder of deeds of the county is forbidden to admit to record any deed of conveyance of any lot in the city of Pittsburg which has not been so registered. Section 4 provides that: "It shall be the duty of all owners of houses and lots or tracts of ground to furnish forthwith descriptions of their property to the engineer to aid him in making up his book of plans; and whensoever such description shall have been furnished and the certificate of the engineer or his assistant shall be received, no property so returned shall be subject to sale for taxes or other municipal claims thereafter to accrue as lien of record thereon except in the name of the owner as returned, and after recovery by suit and service of a writ on him, as in case of a summons, scire facias, or other appropriate writ." Section 5 prescribes that "all assessments based upon the area of the lots or tracts of ground within the city limits, shall be made from the descriptions as registered, as far as such descriptions have been entered." Section 7 makes it the duty of the prothonotary and clerks of the several courts of Allegheny county in which proceedings in partition may be had to deliver to the city engineer a description of the property so divided and of the purparts, with the names of the original owners and of those acquiring title. Section 9 provides that the city engineer shall preserve on file arranged alphabetically, and according to date, all reports made to him of descriptions of houses and lands, "and shall give his certificate at the foot

of duplicate of the descriptions that report has been made to his office of the description of the designated property or properties."

In the case of Trust Co. v. Fricke, 152 Pa. St. 231, 236, 25 Atl. 530, 531, the supreme court of Pennsylvania, speaking of this act of February 24, 1871 (in connection with a later act not material here), said: "The former is a carefully drawn local or special act, providing for a complete system of registration in the city of Pittsburg alone, designed to facilitate the assessment of real estate, the collection of taxes and municipal claims thereon, etc.; and at the same time to protect registered landowners against the consequences of covert sales for taxes or other municipal claims, blunders of incompetent or negligent officials," etc. Looking at the purposes of this act as thus authoritatively declared, can we affirm that there was any failure of duty on the part of the city officials prejudicial to the municipal claims here in question? Let the facts answer.

By deed of December 15, 1837, James Ross conveyed a tract of land lying outside of the then limits of the city of Pittsburg to Isabella M. Negley, who died seised thereof. This land was the subject of proceedings in partition in the orphans' court of Allegheny county at No. 6, June term, 1871, and was divided among the heirs of said decedent, a purpart being allotted to her daughter, Isabel C. Beatty, in severalty. At the time of this partition the land lay within the enlarged limits of the city of Pittsburg. The clerk of the orphans' court, however, made no return of these proceedings in partition to the city engineer. On May 16, 1874, the deed of December 15, 1837, from James Ross to Isabella M. Negley, was registered in the engineer's office. In the year 1882 Isabel C. Beatty married S. J. Sargent. Subsequently S. J. Sargent and Isabel C., his wife, caused the purpart which had been allotted to the latter in the partition proceedings to be subdivided into lots, and laid out on the ground. On September 1, 1885, a plan of these lots was brought to the office of the city engineer for approval and filing in the registry department. Mrs. Sargent herself certainly came to the city engineer's office with the plan, requesting that it be approved by the engineer, and filed in his office. E. M. Bigelow, the city engineer, testifies that the plan was presented by both Mr. and Mrs. Sargent for his official approval, and that both requested that it be filed as their plan. It was approved, the approval being written underneath an indorsement of what the plan was; the whole being as follows: "Plan of property in the 19th ward belonging to S. J. Sargent and wife." "Approved September 1st, 1885. E. M. Bigelow, City Engineer." This plan, thus approved and indorsed, was filed in the city registry office on the same day, and it was entered in the original plan book of the office. Mrs. Sargent made no subsequent report whatever to the city engineer in respect to this property. In making the street improvements and the assessment here involved, the city followed this plan so filed and entered in the official plan book. Mrs. Sargent was the owner of this property when this work was done and the assessments therefor were made. S. J. Sargent, her husband, had previously died. It may be well here to mention one other fact. On September 1, 1885, a duplicate copy of said plan, entitled "Plan of Property in the 19th Ward, City of Pittsburgh, Be-

longing to S. J. Sargent and Wife," with the approval of E. M. Bigelow, city engineer, entered thereon, and with this indorsement: "I hereby adopt this plan as mine. Isabel C. Sargent,"—was acknowledged by Mrs. Sargent, and by her put on record in the office of the recorder of deeds of Allegheny county in Plan Book, vol. 7, p. 153.

Such being the facts, we are not able to concur in the view that these municipal liens should have been filed in the name of Isabella M. Negley. In our judgment, she was not the last registered owner. Under the circumstances then existing, to have filed these liens in her name would have been misleading and erroneous. Both the letter and the spirit of the act of February 24, 1871, required that the liens be filed in the name of Mrs. Sargent, who was the actual owner of the property, and, we think, the last registered owner. When Mrs. Sargent took her plan of lots to the office of the city engineer, and had it accepted and filed, she complied with the requirements of the registry act, and especially with the provisions of the third and fourth sections. She furnished the city engineer with the essential particulars specified in those sections, namely, "the precise dimensions and locality of the premises," as the basis of future assessments as prescribed by the fifth section. Mrs. Sargent had no deed of conveyance to register. Her title in severalty to this property came to her simply through the partition proceedings in the orphans' court. Presumably, she furnished satisfactory evidence to the city engineer that she had acquired the property by "partition,"—one of the modes of "acquiring real estate" mentioned in section 3. It was for the city engineer to determine whether the proof of ownership she produced was sufficient. In fact, she was the owner. When, therefore, acting on behalf of the city, the city engineer accepted and filed her plan of lots, and entered it in the original plan book of the city, Mrs. Sargent came under the protection of the act of February 24, 1871, as a registered owner of the lots, and thereafter the city was bound so to treat her and the property she had so reported and returned. The fact is, there was no registry in the city engineer's office, other than that made by Mrs. Sargent, by which these municipal assessments could have been made. The deed of James Ross to Isabella M. Negley of December 15, 1837, described a single tract of rural land. It is immaterial that no entry may have been made at the place of the registry of the Ross deed connecting it with Mrs. Sargent's registered plan. The registry under the act of February 24, 1871, is not intended for the guidance of conveyancers or title examiners. As we have seen from the cited decision of the supreme court of Pennsylvania, the registry has two purposes only, namely, to facilitate the assessment of real estate and the collection of municipal claims on the one hand and the protection of registered landowners on the other hand.

These municipal liens were filed under sections 1 and 2 of the act of May 16, 1891 (P. L. 69), which direct that the lien shall name the municipal claimant, "the owner or reputed owner," shall contain a reasonable description of the property, shall state the amount claimed, for what improvement the claim is made, and the time when the assessment was finally confirmed or made. All this was done here. The name "Mrs. S. Sargent" in the two instances, and the name "Mrs.

S. J. Sargent" in the other instance, was a sufficient designation of ownership under the circumstances. Such proceedings are in rem, and it has been held that, if a municipal claim designates "the heirs" of a named decedent as owners without naming the heirs themselves, it is a sufficient designation of ownership. Northern Liberties v. Coates' Heirs, 15 Pa. St. 245; Beltzhoover Borough v. Beltzhoover's Heirs, 173 Pa. St. 213, 33 Atl. 1047. We see no reason to doubt that the municipal liens filed here were good as against Mrs. Sargent, and we think that they were equally good as against the appellees who claim under her.

The city of Pittsburg did nothing to mislead Murphy & Hamilton. If the latter had no actual knowledge of these municipal liens, they have only themselves to blame. They took a mortgage on lots in Mrs. Sargent's recorded plan. Even if knowledge were not imputable to them otherwise, their own mortgage, in connection with the recorded plan, apprised them that their mortgagor had been the wife of S. J. Sargent. Now, any proper search in the prothonotary's office of the court of common pleas No. 3 of Allegheny county would have disclosed the two municipal liens which had been filed on August 14, 1894. Then the improvement of Supreme alley was patent, and Murphy & Hamilton were chargeable with knowledge that these lots were assessable for their proportion of the cost of that work, and that it was a statutory lien. Inquiry, which, under the circumstances, was a duty, would have revealed the pendency of the proceeding for the assessment in re grading, paving, and curbing Supreme alley, at No. 548, February term, 1895, of the court of common pleas No. 3 of Allegheny county. We are of opinion that nothing has been shown to invalidate or postpone these claims of the city of Pittsburg. The decree of the circuit court is reversed, and the case is remanded to that court, with directions to overrule the exceptions to the marshal's return in respect to the municipal liens filed by the city of Pittsburg for the improvement of Beatty street and Supreme alley, and confirm said return as to them.